TIMOTHY A. CANNING.   Cal. State Bar No. 148336
Law Offices of Timothy A. Canning
1125 16th St.. Suite 204
PO Box 4201
Arcata. CA 95518
(707) 822-1620;  Fax: (707) 760-3523
tc@tclaws.com

Attorney for Plaintiff Rindy Merrifield

ORIGINAL FILED
APR 3 0 2008
RICHARD W. WIEKING
NORTHERN DISTRICT OF CALIFORNIA

E-filing

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SI

BY FAX

|  |  |
|---|---|
| RINDY MERRIFIELD. individually and as trustee of the RINDY MERRIFIELD INC. DEFINED BENEFIT PLAN. | Case No. |
|  | COMPLAINT FOR DAMAGES UNDER ERISA: AND STATE LAW CLAIMS FOR BREACH OF FIDUCIARY DUTIES. FRAUD. NEGLIGENCE. AND BREACH OF CONTRACT: |
| Plaintiff | |
| v. | DEMAND FOR JURY TRIAL |
| MUTUAL SERVICE CORPORATION and MICHAEL T. WOODS. | |
| Defendants | |

## Introduction

1.   Plaintiff brings this action to recover damages arising out of defendants' investment recommendations and securities transactions.  As a participant in. trustee of. and fiduciary to the Rindy Merrifield Defined Benefit Pension Plan (referred to herein as the "PLAN"). plaintiff brings this action under the Employee Retirement Income Security Act of 1974. 29 U.S.C. §§ 1001 et seq. (referred to herein as "ERISA").

1

Plaintiff also asserts pendant state law claims against defendants for damages plaintiff sustained individually and in her Individual Retirement Account (collectively referred to herein as the "PERSONAL ACCOUNTS") as a result of defendants' investment recommendations and securities transactions.

**Jurisdiction and Venue**

2.    As to the claims being asserted by plaintiff as trustee of the PLAN, this action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq., and more specifically, sections 1109 and 1132(a)(2) thereof. The remaining claims asserted by plaintiff are subject to this court's supplemental jurisdiction, as the relationship between the ERISA claim and plaintiff's state claims arose from a common nucleus of operative facts and are sufficiently close so as to form part of the same case or controversy under Article III of the United States Constitution.   Hence, this Court has jurisdiction over this matter under 29 U.S.C. § 1132 and 28 U.S.C.§1367(a).

3.    Venue for this complaint is proper in this district pursuant to 29 U.S.C. 1132(e)(2),  in that defendant Michael T. Woods lives and works in San Francisco, California and most of the services which form the basis for this action were performed by defendants in San Francisco, California.

**The Parties**

4.    Defendant Mutual Services Corporation, Inc., (referred to herein as "MSC") is a corporation organized under the laws of the State of Michigan and has its principal place of business in West Palm Beach, Florida.   MSC is a securities broker-dealer and a member of FINRA (formerly known as the National Association of Securities Dealers).  At all times relevant to the events alleged herein, MSC was a registered investment advisor, and was so registered with the Securities Exchange Commission ("SEC"). At all times relevant to the events alleged herein, MSC was registered to sell securities and provide investment advice in California.

5.    At all times relevant to the events alleged herein, defendant Michael T. Woods ("WOODS") was employed by defendant MSC.   At all times relevant to the

2

Complaint for Damages

1    events alleged herein, WOODS was an associated person of defendant MSC and was

2    registered with FINRA, the SEC, and the California Department of Corporations to sell

3    securities in California, and to provide investment recommendations.

4         6.  Plaintiff Rindy Merrifield ("MERRIFIELD") is domiciled in California.

5    The PLAN is also domiciled in California.

6         7.  Plaintiff is informed and believes and thereon alleges that each

7    defendant named herein was, at all times herein mentioned, acting as the agent of each

8    and every other defendant named herein, and in doing the things herein alleged was

9    acting within the course and scope of such agency and with the permission and consent

10   of each and every defendant. Plaintiff is informed and believes and thereon alleges that

11   all defendants were acting together in concert or pursuant to an express or implied

12   agreement to further or accomplish the wrongful acts as alleged herein.

13   **<u>Prior Arbitration</u>**

14         8.  On July 7, 2006, plaintiff filed with the NASD (now known as

15   "FINRA") an arbitration claim and Uniform Submission Agreement against defendants,

16   seeking recovery for the harm as alleged herein.  As a member of NASD/FINRA, and as

17   an associated person of an NASD/FINRA member, defendants were bound by NASD's

18   Code of Arbitration Procedure, as well as other NASD/FINRA rules.  Pursuant to NASD

19   Code of Arbitration Procedure rule 10307, plaintiff's time for instituting  legal

20   proceedings was tolled as of the date she filed her Uniform Submission Agreement with

21   NASD/FINRA.  The tolling continued for so long as  NASD/FINRA retained jurisdiction

22   over the matter submitted.

23         9.  On December 6, 2007, the arbitrators appointed by the NASD to hear

24   plaintiff's claims dismissed plaintiff's claims without prejudice, pursuant to rule 10305(a)

25   of the NASD Code of Arbitration Procedure.   Rule 10305(a) provides that NASD

26   arbitrators may dismiss a case and refer the parties to their judicial remedies, without

27   prejudice to any claims or defenses available to any party.

28

3

Complaint for Damages

10.   Defendants have not sought to vacate the above-referenced NASD award.  Their time to do so has now expired, pursuant to 9 U.S.C. §12 and California Code of Civil Procedure §1288.

**The PLAN**

11. Beginning in or about March, 2001,  plaintiff, acting on behalf of the PLAN, retained defendants to render investment advice, transact securities trades, and manage investments for the PLAN, as well as for plaintiff's Individual Retirement Account ("IRA") and for plaintiff's personal account.  Defendants agreed to manage the assets in the accounts on a discretionary basis.

12. At all times relevant to the events alleged herein, plaintiff believed that defendants were acting in conformity with the rules and regulations applicable to the securities industry, and were recommending and effecting transactions in accordance with best interests of the PLAN.

13.  Plaintiff alleges that defendants were not, in fact, acting in conformity with the rules and regulations applicable to the securities industry and registered investment advisors.  Plaintiff further alleges that defendants' recommendations and transactions in the PLAN were not in the best interests of the PLAN.

14. Between March, 2001 and October, 2005, defendants actively traded the securities held in the PLAN, so much so that the transactions in the PLAN generated $110,000 in commissions on an average account equity of $219,000.  This resulted in a "cost equity ratio" in excess of 12 percent, which is excessive by industry standards.

15.  The transactions in which defendants engaged in the PLAN accounts were excessive in light of the purposes of the PLAN.   Plaintiff alleges that the defendants engaged in those transactions solely for the purposes of generating commissions.   The transactions made by defendants in the PLAN account lacked any reasonable basis and were unsuitable.

4

Complaint for Damages

16.  As a result of the excessive trading and unsuitable investments, the PLAN lost approximately $119,000 in value, or more according to proof.

17. As a direct result of the losses sustained as a result of defendants' acts and omissions, and as a result of the commissions paid to defendants, the PLAN was unable to meet its obligations to the plan participants.  As a result, plaintiff was required to restore the account by adding $75,000 or more according to proof, from plaintiff's own pocket.

**Personal Accounts**

18.  Beginning in or about March, 2001,  plaintiff retained defendants to render investment advice, transact securities trades, and manage investments for plaintiff's PERSONAL ACCOUNTS.  Defendants agreed to manage the assets in the PERSONAL ACCOUNTS on a discretionary basis.

19. At all times relevant to the events alleged herein, plaintiff believed that defendants were acting in conformity with the rules and regulations applicable to the securities industry, and were recommending and effecting transactions in accordance with best interests of  her PERSONAL ACCOUNTS.

20. Plaintiff alleges that defendants were not, in fact, acting in conformity with the rules and regulations applicable to the securities industry and registered investment advisors.  Plaintiff further alleges that defendants' recommendations and transactions in her PERSONAL ACCOUNTS were not in the best interests of plaintiff's PERSONAL ACCOUNTS.

21. Beginning in or about August, 2001 and continuing through November, 2005, plaintiff's "PERSONAL ACCOUNTS" were excessively traded by defendants. Defendants were paid commissions in the amount of $16,000 or more, according to proof, on an average account equity of approximately $78,000.

22. As a direct result of the excessive trading and unsuitable recommendations in plaintiff's PERSONAL ACCOUNTS, plaintiff lost nearly $17,500.

5

**Atel Investment**

23.  In or about 2004, defendants also sold to plaintiff an investment in a limited partnership known as Atel.  Defendant WOODS told plaintiff that, inter alia, Atel paid an annual dividend of 8 percent annually.  This statement was false.

24. Plaintiff relied on defendant WOODS statements when she invested in Atel.  The truth was that, at the time defendant WOODS made the statements alleged in paragraph 23 hereinabove,  Atel did not pay dividends;  Atel never yielded eight percent annually;  and  Atel averaged an annual return approximately 1.5 percent for the previous 20 years.   Had plaintiff known the truth, she would not have invested in Atel.

25. Plaintiff alleges that defendant WOODS knew or reasonably should have known the truth as alleged in paragraph 24.  Plaintiff further alleges that defendant WOODS did not tell her the truth in order to persuade her to invest in Atel, which in turn would result in a larger commission to defendants WOODS and MSC than would safe, suitable investments.

26.  As a direct result of her investment in Atel, plaintiff has lost approximately $17,000 or more, according to proof.

**FIRST CAUSE OF ACTION**
VIOLATIONS OF ERISA
(all defendants)

27. Plaintiff incorporates paragraphs 1 through 17 hereinabove, as though fully set forth herein.

28. At all times relevant to the facts alleged herein, defendants MSC and WOODS were fiduciaries to the PLAN, in that defendants recommended investments, and otherwise managed the PLAN's assets.   Defendants were directly responsible for the investment of the assets of the PLAN.  The PLAN's assets were invested in various securities, at defendants' direction.

29. While defendants were rendering investment recommendations and

6

Complaint for Damages

advice, and managing the assets of the PLAN, defendants engaged in the wrongdoing as alleged in paragraphs 13 to 17 hereinabove.

30. As a direct result of defendants' acts and omissions, the PLAN suffered severe losses in its assets, amounting to $229,000 or more, according to proof, as alleged in paragraph 14 and 16, hereinabove. In addition, plaintiff herself was required to add to the PLAN an additional $75,000.

31. Plaintiff has employed attorneys to represent her in this action, and has incurred and will continue to incur expenses for attorney fees and costs of action.

WHEREFORE, plaintiff demands judgment as hereinafter alleged.

## SECOND CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
(all defendants)

32. Plaintiff incorporates paragraphs 1 through 10 and 18 through 26 hereinabove, as though fully set forth herein.

33. Defendants were fiduciaries to plaintiff, by virtue of the facts alleged hereinabove.   Plaintiff reposed her trust and confidence in defendants' investment advice and recommendations.

34. Defendants breached their fiduciary duties by engaging in the acts and omissions alleged in paragraphs 18 to 26 hereinabove.

35. As a direct and proximate result of defendants' breaches of fiduciary duties owed to plaintiff, plaintiff suffered losses as alleged in paragraphs 21, 22 and 26 hereinabove.

36. The aforementioned conduct of defendants was intentional, designed to deprive plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct in that it subjected plaintiff to cruel and unjust hardships in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages against defendants.

7

WHEREFORE, plaintiff demands judgment as hereinafter alleged.

### THIRD CAUSE OF ACTION
PROFESSIONAL NEGLIGENCE
(all defendants)

37. Plaintiff incorporates paragraphs 1 through 10 and 18 through 26 hereinabove, as though fully set forth herein.

38. Defendants held themselves out to plaintiff as professionals engaged in the business of rendering investment advice and managing investments.  Defendants further held themselves out to plaintiff to be experts with respect to investments. Defendants knew with certainty that plaintiff did not have an equivalent expertise.

39.   Defendants knew that plaintiff required their expertise and that plaintiff relied upon that expertise.  Defendants knew or should have known that plaintiff did not know or understand the true facts and risks involved in the investment advice and investment management services offered by defendants, and was not sufficiently experienced or sophisticated to evaluate the full extent of the risks plaintiff was undertaking.

40.   As a result of the events alleged hereinabove, plaintiff relied on defendants' recommendations and followed those recommendations.  Defendants undertook a special duty of care toward plaintiff.

41.   Due to the events as alleged hereinabove, defendants owed plaintiff a professional duty of care in rendering investment advice and selecting investments appropriate for plaintiff.

42. The conduct alleged hereinabove constitutes breaches of duties defendants owed to plaintiff.

43. These breaches are the proximate cause and the cause in fact of plaintiff's damages, as alleged hereinabove.

WHEREFORE, plaintiff demands judgment as hereinafter alleged.

8

Complaint for Damages

**FOURTH CAUSE OF ACTION**
BREACH OF WRITTEN CONTRACT
(all defendants)

44. Plaintiff incorporates paragraphs 1 through 10 and 18 through 26 hereinabove, as though fully set forth herein.

45. In or about March, 2001, plaintiff and defendants entered into written contracts by which defendants agreed to recommend investments to plaintiff and handle plaintiffs' accounts in accordance with industry rules and standards.

46. Beginning in March, 2001 and continuing thereafter until on or about November, 2005, defendants breached the written contract by, *inter alia,* taking discretion in plaintiff's PERSONAL ACCOUNTS without written authority, recommending unsuitable investments, engaging in excessive transactions in plaintiffs PERSONAL ACCOUNTS and thereby collecting excessive commission, and marking order tickets as "unsolicited" when in fact such orders were solicited.

47. As a result of the above-referenced breaches, plaintiff has been damaged in the amount of $50,000 or more, according to proof.

48. Plaintiff has performed all conditions and covenants required by the contract, on her part.

WHEREFORE, plaintiff demands judgment as hereinafter alleged.

**FIFTH CAUSE OF ACTION**
FRAUD
(all defendants)

49. Plaintiff incorporates paragraphs 1 through 10 and 23 through 26 hereinabove, as though fully set forth herein.

50. Beginning in 2004, defendant WOODS, acting within the course and scope of his employment with defendant MSC, made the representations and concealed facts, as alleged hereinabove in paragraphs 23 and 24.

51. When defendant WOODS made the representations alleged

9

Complaint for Damages

1    hereinabove, defendant WOODS knew or reasonably should have known them to be

2    false and made these representations with the intention to deceive and defraud plaintiff

3    and to induce plaintiff to act in reliance on these representations in the manner

4    hereinabove  alleged, or with the expectation that plaintiff would so act.

5            52. At the time defendant WOODS made these representations and at the

6    time plaintiff took the actions herein alleged, plaintiff was ignorant of the falsity of

7    defendant's representations, and believed them to be true. In reliance on these

8    representations, plaintiff was induced to and did purchase units in Atel.  Had plaintiff

9    known the true facts, plaintiff would not have invested as she did.

10           53. In the alternative, defendant WOODS' failure to disclose and his

11   suppression of the facts alleged hereinabove was likely to mislead plaintiff and did in fact

12   mislead plaintiff.  The representations, failures to disclose information and suppressions

13   of information were made with the intent to induce plaintiff to act in the manner

14   hereinabove alleged, in reliance thereon. Plaintiff was ignorant of the existence of the

15   facts that defendant WOODS suppressed and failed to disclose. If plaintiff had been

16   aware of the existence of the facts not disclosed by defendant WOODS, plaintiff would

17   not have invested as she did.

18           54. As a proximate result of the fraudulent conduct of defendants as

19   hereinabove alleged, plaintiff was damaged in an amount not yet ascertained but which is

20   in the approximate amount of $17,000, or more according to proof.

21           55. The aforementioned conduct of defendants was intentional, designed to

22   deprive plaintiff of property or legal rights or otherwise causing injury, and was

23   despicable conduct in that it subjected plaintiff to cruel and unjust hardships in conscious

24   disregard of plaintiff's rights, so as to justify an award of exemplary and punitive

25   damages against defendants.

26           WHEREFORE, plaintiff demands judgment as hereinafter alleged.

27

28

Complaint for Damages

# SIXTH CAUSE OF ACTION
(Negligent Misrepresentation)
(All Defendants)

56. Plaintiff incorporates paragraphs 1 through 10, 23 through 26, 50, and 52 to 54 hereinabove, as though fully set forth herein.

57. When defendant WOODS made the representations identified hereinabove in paragraphs 23 and 24, defendant WOODS had no reasonable ground for believing them to be true.  Defendant WOODS  made these representations with the intention of inducing plaintiff to act in reliance on these representations in the manner alleged hereinabove, or with the expectation that plaintiff would so act.

WHEREFORE, plaintiff demands judgment that:

1.   On the first cause of action, under ERISA, that each defendant be found to have breached their fiduciary duties with regard to the PLAN;

2.   On the first cause of action, under ERISA, that each defendant, jointly and severally, be required to make good the losses of the PLAN, in the amount of $304,000, or more, according to proof;

3.   On the first cause of action, under ERISA, that the court allow plaintiff reasonable attorney fees and costs of this action;

4.   On the remaining causes of action, for damages sustained by plaintiff, in the amount of $50,000 , or more, according to proof;

5.   On all causes of action, prejudgment interest on the damages, according to proof;

6.   On the fifth cause of action, for punitive or exemplary damages;

///
///
///
///
///

11

Complaint for Damages

1    7.  For costs expended in this proceeding; and

2    8.  For such other and further relief as the Court may deem proper.

3                                    Law Offices of Timothy A. Canning

4

5    Dated:  April 30, 2008          By

6                                       Timothy A. Canning
                                        Attorney for Plaintiff
7

8                       **Demand for Jury**

9    Plaintiff hereby demands a trial by jury.

10

11                                   Law Offices of Timothy A. Canning

12

13   Dated:  April 30, 2008          By

                                        Timothy A. Canning
14                                      Attorney for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              12

Complaint for Damages